IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF ARKANSAS
LITTLE ROCK DIVISION

IN RE: Craig M. Frederickson, Debtor          No. 4:06-bk-15737
                                               Ch. 13

**MEMORANDUM OPINION AND ORDER**

Before the Court is the trustee's Objection to Confirmation of Initial Plan filed on January 19, 2007. The debtor, Craig M. Frederickson, filed his chapter 13 voluntary petition and proposed plan on December 13, 2006. In his plan, the debtor proposed to pay $600.00 per month for a period of 48 months, with the unsecured creditors receiving a pro rata distribution. Because the debtor's income is above the median family income for the state of Arkansas, the trustee objected to the 48 month period, arguing instead that the plan must provide for payments over a 60 month time period. The Court heard the trustee's objection on February 21, 2007, and took the matter under advisement to allow the parties additional time to brief the issues. For the reasons stated below, the Court overrules the trustee's objection.

**Jurisdiction**

The Court has jurisdiction over this matter under 28 U.S.C. § 1334 and 28 U.S.C. § 157, and it is a core proceeding under 28 U.S.C. § 157(b)(2)(L). The following opinion constitutes findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052, made applicable to this proceeding under Federal Rule of Bankruptcy Procedure 9014.

**Background**

The facts in this case are undisputed and have been stipulated by both parties:

    1.    This case was filed on December 13, 2006. The plan, schedules and Statement of Current Monthly Income and Disposable Income (Form 22C) were timely filed on that date.

    2.       Pursuant to the calculations reflected on the Form 22C, the debtor is an "above-median" debtor whose disposable income is determined pursuant to 11 U.S.C. § 1325(b)(3). The disposable income calculation reflected on Form 22C, line 58 is a negative amount, $-95.49.

    3.       The plan provides that the debtor will pay $600. per month for a period of 48 months, with unsecured creditors to receive a <u>pro rata</u> dividend. As of the date of the first meeting of creditors, it was anticipated that the unsecured creditors would receive a dividend of $3,672.82, or 61% of the scheduled claims. As of Tuesday, February 20, 2007, based upon the claims in the case, the trustee calculates that the unsecured creditors will receive $5,455.11. If the debtors are required to maintain their case for 60 months, it is estimated that the unsecured creditors' dividend would near, if not equal, 100% on their claims.

Additionally, the parties stipulated to the following exhibits:

    A.       Narrative Statement of Plan, filed December 13, 2006.
    B.       Official Form 22C, Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income, filed December 13, 2006.
    C.       Schedules I, J, filed December 13, 2006.
    D.       Trustee's "payees" print-out reflecting scheduled and filed claims.

The trustee's principle objection is that because the debtor is above the median family income for the state of Arkansas, he must provide for payments over a 60 month period of time in accordance with 11 U.S.C. § 1325(b). The debtor argues that the required 60 month applicable commitment period should not apply in his case because he has no projected disposable income according to Form 22C (sometimes referred to as the chapter 13 means test). According to the debtor, the applicable commitment period is a multiplier that is used to determine the amount of disposable income that must be paid to unsecured creditors over a period of time. Because he has a negative income according to Form 22C, he should not be required to propose a 60 month plan. The debtor also questions the amount of disposable income that must be committed to unsecured creditors under the plan.

**Findings of Fact and Conclusions of Law**

According to the bankruptcy code, the court shall confirm a plan if the requirements of 11 U.S.C. § 1325(a) are met.  However, if either the trustee or an unsecured creditor objects to confirmation, the court cannot confirm the plan unless the additional requirements under § 1325(b) are also met.  According to subsection (b), all of the debtor's projected disposable income that will be received during the applicable commitment period must be applied to make payments to unsecured creditors under the plan.  11 U.S.C. § 1325(b).[1]  This subsection includes two specific requirements for a

---

[1] (b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan--
   (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
   (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.
(2) For purposes of this subsection, the term "disposable income" means current monthly income received by the debtor . . . less amounts reasonably necessary to be expended--
   (A)    (i) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed; and
          (ii) for charitable contributions . . . in an amount not to exceed 15 percent of gross income of the debtor for the year in which the contributions are made; and
   (B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.
(3) Amounts reasonably necessary to be expended under paragraph (2), other than subparagraph (A)(ii) of paragraph (2), shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2), if the debtor has current monthly income, when multiplied by 12, greater than--
   (A) in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner;
   (B) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals; or
   (C) in the case of a debtor in a household exceeding 4 individuals, the highest median family income of the applicable State for a family of 4 or fewer individuals, plus $525 per month for each individual in excess of 4.
(4) For purposes of this subsection, the "applicable commitment period"--
   (A) subject to subparagraph (B), shall be--
      (i) 3 years; or
      (ii) not less than 5 years, if the current monthly income of the debtor and the debtor's spouse combined, when multiplied by 12, is not less than--
         (I) in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner;
         (II) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals; or
         (III) in the case of a debtor in a household exceeding 4 individuals, the highest

debtor whose income is above the median family income. First, the debtor's disposable income is determined in accordance with § 707(b)(2), the so-called "means test." Second, the applicable commitment period (in other words, the length of the debtor's plan) shall be not less than five years. Unfortunately, the two requirements, both the result of this debtor having above median family income, in this instance present the Court with a statutory dichotomy. The statutory scheme appears to contemplate only occasions where the debtor, using the means test formula, has a positive projected disposable income that must be committed to the plan over the applicable time period. This is not always the case.

### Projected Disposable Income

The debtor's "disposable income," an expressly defined term,[2] is determined by taking his "current monthly income," also a defined term,[3] and subtracting amounts reasonably necessary for the debtor's maintenance and support. According to the debtor's Schedules I and J, the debtor in reality has approximately $600.00 of disposable income each month. However, for an above median family income debtor, the amounts reasonably necessary to be expended for his maintenance and support are to be determined in accordance with the means test set forth in § 707(b)(2), using Form 22C. Form 22C

---

median family income of the applicable State for a family of 4 or fewer individuals, plus $525 per month for each individual in excess of 4; and
(B) may be less than 3 or 5 years, whichever is applicable under subparagraph (A), but only if the plan provides for payment in full of all allowed unsecured claims over a shorter period.

[2] "Disposable income" is defined, in relevant part, as
current monthly income received by the debtor . . . less amounts reasonably necessary to be expended (i) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed; and (ii) for charitable contributions . . . in an amount not to exceed 15 percent of gross income of the debtor for the year in which the contributions are made . . . .
11 U.S.C. § 1325(b)(2).

[3] "Current monthly income" is defined, in relevant part, as "the average monthly income from all sources that the debtor receives . . . without regard to whether such income is taxable income, derived during the 6-month period ending on . . . the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by section 521(a)(1)(B)(ii) . . . ." 11 U.S.C. § 101(10A).

determines expenses in accordance with IRS national and local standards. The parties stipulated that the debtor's disposable income according to Form 22C is a negative amount. Even though the debtor has proposed a plan that will allow the unsecured creditors to receive a substantial distribution in this case, according to Form 22C the debtor is not required to make any payments to the unsecured creditors under the plan.[4] The trustee concedes this point in his brief.[5]

Although the discrepancy between the disposable income on Schedules I and J and Form 22C appears problematic, the code is clear. Section 1325(b)(3) states that in determining disposable income for a debtor whose current monthly income is greater than the median family income for the state, amounts reasonably necessary to be expended for maintenance and support *shall* be determined by the means test. 11 U.S.C. § 1325(b)(3). The use of "shall" is "mandatory and leaves no discretion with respect to the expenses and deductions that are to be deducted in arriving at disposable income." *In re Barr*, 341 B.R. 181, 185 (Bankr. M.D.N.C. 2006); *see also, In re Kolb*, No. 06-32036, 2007 WL 960135 (Bankr. S.D. Ohio Mar. 30, 2007) (stating that use of § 707(b)(2) reflects Congress's intent to provide less discretion in determining expenses for above median family income debtor); *In re Miller*, No. 06-81889-JAC-13, 2007 WL 128790 (Bankr. N.D. Ala. Jan. 18, 2007) (discussing cases in general and holding Form 22C dispositive for above median income debtor's projected disposable income); *but see In re Ward*, No. 06-42411, 2007 WL 63580 (Bankr. W.D. Mo. Jan. 7, 2007) (stating Form 22C means test serves as a starting point in determining projected disposable income); *In re Gress*, 344

---

[4] Section 1325(b)(1)(B) used to require that a debtor pay into the plan all of his projected disposable income received during the first three year period to make payments under the plan. The payments would presumably be used to pay the secured claims, the priority claims, and the unsecured claims. This section was amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 [BAPCPA]. Now, a debtor is required to pay into the plan all of his projected disposable income received during the applicable commitment period to make payments to *unsecured creditors* under the plan. There is no longer a requirement that the secured claims or priority claims are also to be paid out of the projected disposable income.

[5] The trustee states: "Thus, there is no minimal amount which must be paid to the general unsecured creditors by virtue of the disposable income plan confirmation requirements."

B.R. 919 (Bankr. W.D. Mo. 2006) (same).  As in the current situation, a debtor whose income is above the median family income may have "excess" income that the debtor is not required to commit to the payment of unsecured creditors.  *Barr*, 341 B.R. at 185.  However, the language of the statute is clear and the function of the Court is to enforce the statute according to its terms.  *Lamie v. United States Trustee*, 540 U.S. 526, 534 (2004).  There is nothing in the code that suggests any latitude in this interpretation and the Court finds that the debtor has no projected disposable income to commit to the plan for the benefit of unsecured creditors according to Form 22C.  Again, the trustee in this instance expressly concedes this point.

### Applicable Commitment Period
#### *Temporal Requirement or Monetary Requirement*

After determining the monthly amount of disposable income the debtor must commit to the plan, the debtor must satisfy the requirement that his projected disposable income will be applied for the benefit of unsecured creditors during the applicable commitment period. 11 U.S.C. § 1325(b)(1)(B).  Here, the trustee objects specifically to the commitment period proposed by the debtor--48 months.  According to the trustee, the commitment period set forth in § 1325 (b)(4) is a time or temporal requirement, not a monetary requirement.  The debtor argues that because he has no disposable income according to Form 22C, he should not be required to propose a "not less than 5 year" plan as stated in § 1325(b)(4).  In effect, the debtor argues that the applicable commitment period of five years is a multiplicand against which his disposable income is multiplied to determine the amount that unsecured creditors shall receive.  Because he has no disposable income to be distributed to the unsecured creditors, the debtor believes § 1325(b)(4) is inapplicable in his case.

Much has been written about whether the applicable commitment period is a temporal requirement or a monetary requirement.  *See generally In re Luton*, No. 6:06-bk-70629M, 2007 WL 756373 (Bankr. W.D. Ark. March 8, 2007) (listing in detail courts that find both positions).  Courts holding that the period is a temporal requirement focus primarily

6

on the statutory language, which states that the applicable commitment period for an above median income debtor "shall be not less than 5 years." 11 U.S.C. § 1325(b)(4)(A). Further support for this position is found in § 1325(b)(4)(B), which states that the period of time may be less than the applicable commitment period "only if the plan provides for payment in full of all allowed unsecured claims over a shorter period."

Courts finding that the requirement is a monetary requirement generally agree that the applicable commitment period is part of a formula to determine the amount to be paid to unsecured creditors. Courts should focus "on the amount a debtor will return to creditors rather than the length of time it might take the debtor to perform." *Luton*, 2007 WL 756373 at *4 (citing *In re Fugar*, 347 B.R. 94 (Bankr. D. Utah 2006)). The *Fugar* court found that the requirement was both a temporal and a monetary requirement. *Fugar*, 347 at 99. It was temporal in that the debtors had to project their proposed income over a specific period of time and the statute provided a time limit for performing under a plan. Conversely, it was monetary in the sense that it required the debtor to commit to pay unsecured creditors a specific amount. *Id*. The three year period referenced in § 1325(b)(1)(B) before the BAPCPA amendments was the length of time a debtor had to pay his projected disposable income into a plan for the benefit of *all* creditors. If a debtor had no disposable income to pay into the plan, presumably the plan could not be confirmed. *See, e.g., In re Schanuth*, 342 B.R. 601, 604-06 (Bankr. W.D. Mo. 2006) (stating that when a debtor's expenses exceed income, a plan is not feasible and, therefore, not confirmable); *but see In re Alexander*, 344 B.R. 742, 750 n.5 (Bankr. E.D.N.C. 2006) (finding that after BAPCPA, feasibility is no longer dictated by disposable income calculation).

However, this is a BAPCPA case. The applicable commitment period refers to a specific period of time in the statute--three years or five years--and the Court finds that when the commitment period applies, it is a temporal requirement, not a monetary requirement as suggested by the debtor. If a debtor has income below the median family income for his state, he must commit his projected disposable income for the benefit of his unsecured

7

creditors for a period of three years. If a debtor has income above the median family income for his state, he must commit his projected disposable income for the benefit of unsecured creditors for not less than five years. This is what is required by § 1325(b)(4). The only way for a debtor to shorten this temporal requirement is "if the plan provides for payment in full of all allowed unsecured claims over a shorter period." 11 U.S.C. § 1325(b)(4)(B).

### *No Projected Disposable Income*

However, a different situation arises when an above median family income debtor has no projected disposable income according to Form 22C, as in the present case. In this situation, the "applicable commitment period" phrase may not be relevant. *See, e.g., In re Lawson*, Nos. 06-22766, 06-22812, 2007 WL 184733 at *3 (Bankr. D. Utah Jan. 25, 2007); *Alexander*, 344 B.R. at 751. The applicable commitment period is the length of time during which the debtor's projected disposable income will be applied to make payments to unsecured creditors under the plan. 11 U.S.C. § 1325(b)(1)(B). However, the subsection that determines the length of the applicable commitment period begins by stating, "[f]*or purposes of this subsection*, . . . ." The subsection to which the statute is referring is subsection (b), the only section in the code that discusses the applicable commitment period.[6]

Subsection (b) addresses what a plan must include in order for a court to confirm a plan over the objection of the trustee or an unsecured creditor. The requirement is that the debtor provide that all of his projected disposable income received during the applicable commitment period be applied to make payments to the unsecured creditors. The debtor's disposable income is his current monthly income less expenditures as

---

[6] In fact, the only other reference to the applicable commitment period in the code appears in § 1329(c), but, again, only in relation to § 1325(b)(1)(B):

> (c)   A plan modified under this section may not provide for payments over a period that expires after the applicable commitment period under section 1325(b)(1)(B) after the time that the first payment under the original confirmed plan was due . . . .

determined by Form 22C. 11 U.S.C. § 1325(b)(2), (3). If the above median family income debtor has no disposable income, then the requirement that he commit that amount monthly, for five years, for the benefit of unsecured creditors reveals the statutory dichotomy. In the absence of any disposable income (as set by Form 22C), the determination of an applicable commitment period (also set by Form 22C) appears to be no longer required. In other words, the applicable commitment period is relevant "for purposes of this subsection" only if the above median family income debtor actually has "projected disposable income" to make payments to unsecured creditors under the plan.

Two bases support, and limit, this conclusion. First is the introductory clause to § 1325(b)(4), which states: "*For purposes of this subsection*"--subsection (b). If, for purposes of subsection (b), the debtor has no disposable income to commit for the benefit of unsecured creditors, it is incongruous to require him to commit that amount--zero--for a specific period of time in order to be eligible to propose a confirmable chapter 13 plan. Under pre-BAPCPA law, if the trustee or an unsecured creditor objected to the debtor's proposed plan, the debtor would have had to provide that all of his projected disposable income received in a three year period would be applied to make payments to *all* creditors under the plan--secured, priority, and unsecured. That is no longer the instance; now, the projected disposable income only needs to be applied to make payments to unsecured creditors under the plan for the applicable commitment period. If the debtor does not have disposable income under § 1325(b)(2), the applicable commitment period referenced in § 1325(b)(1) does not come into play. According to one court, "there is no reason to extend plans artificially if there is no requirement that debtors pay a dividend to unsecured creditors over time." *Alexander*, 344 B.R. at 751. The result is that an above median family income debtor who has no disposable income according to Form 22C can propose a confirmable plan spanning less than five years if the remaining statutory requirements are met. In this case, the debtor has done just that.[7]

---

[7] The Court is aware that its finding may actually allow an above median family income debtor to propose a confirmable chapter 13 plan that lasts less than three years. The Court can find no other requirement under the BAPCPA code that requires a minimum plan period of even three years if the debtor

Section 1325(b) is not the only reference to the required length of a debtor's plan that appears in the code. Section 1322(d) states that the plan of an above median family income debtor "may not provide for payments over a period that is longer than 5 years." 11 U.S.C. § 1322(d)(1). This provision establishes a maximum plan length that is the same as the applicable commitment period, but it does not require a minimum commitment period. *Alexander*, 344 B.R. at 751. If there is no projected disposable income under § 1325(b)(2) for the benefit of unsecured creditors, and, thus, no applicable commitment period under § 1325(b)(4), the debtor should be able to meet the other confirmation requirements under §§ 1322 and 1325 in whatever period of time he may feasibly do so, within the five years allowed by § 1322(d)(1). *Id.*

Second, the term "disposable income" is statutorily defined in the context of a "current monthly income" analysis. Current monthly income is determined historically. Specifically, the debtor is required to determine a figure based on the average of his monthly income from all sources for the six month period prior to his or her filing. Thus, the disposable income figure, although a projection, is a finite figure based upon set and definite historical data. Accordingly, and definitionally, the "disposable income" figure does not appear to contemplate increases based on raises, windfalls, or the prospective effect of § 1306.[8] Hence, there appears to be no Congressional purpose designed or served in the circumstance where an above median family income debtor has a negative income and the trustee concedes that the debtor has no obligation to make payments into his plan for the benefit of his unsecured creditors. Additionally, it is apparent from a close reading of § 1325(b)(1) that, in the peculiar and specific facts of this case, the debtor will not have income "received," "applied," or available to "make payments to unsecured creditors" during whatever term is appropriate for the length of his plan.

---

has no projected disposable income as determined by Form 22C.

[8] "For purposes of this subsection, the term 'disposable income' means current monthly income received by the debtor . . . ." 11 U.S.C. § 1325(b)(2).

**Conclusion**

In this case, the debtor has proposed a 48 month plan that pays a substantial amount to his unsecured creditors, and the trustee objected. Because the debtor is an above median family income debtor, the Court finds that his projected disposable income is determined by Form 22C. The trustee did not object to the debtor's calculations on Form 22C, and the parties have stipulated that the debtor's projected disposable income is a negative number. Additionally, and perhaps appropriately, the trustee did not object to the feasability of the debtor's plan or argue that the plan was not proposed in good faith. According to § 1325(b)(1)(B), the debtor is not required to make payments to his unsecured creditors under the plan. Because of this, the Court finds that the applicable commitment period does not apply in the debtor's case. The trustee's objection to confirmation of the debtor's plan is overruled and the debtor's plan is confirmed.

IT IS SO ORDERED.

May 16, 2007

DATE

RICHARD D. TAYLOR
UNITED STATES BANKRUPTCY JUDGE

cc: O.C. "Rusty" Sparks, attorney for the debtor
David D. Coop, chapter 13 trustee
Kimberley F. Woodyard, attorney for the trustee

EOD on 5/16/07 by BG